# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| FN Herstal, S.A., <br>     Plaintiff, <br><br> v. <br><br> Clyde Armory, Inc., <br>     Defendant. | Civil Action No. 3:12-cv-102-CAR |

## DECLARATION OF ANDREW S. CLYDE IN SUPPORT OF DEFENDANT CLYDE ARMORY INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Andrew S. Clyde, hereby declare as follows:

1. My name is Andrew S. Clyde. I am at least 18 years of age and currently reside in Athens, Georgia. I have personal knowledge of all facts stated in this declaration.

2. I am the founder, owner, and President of Clyde Armory, Inc. ("Clyde Armory"), which is a corporation organized under the laws of the state of Georgia and which has its principle place of business in Athens, Georgia. Clyde Armory currently has a second business location in Perry, Georgia.

3. I founded Clyde Armory in 1991 as a sole proprietorship and incorporated the business as a closely-held S-Corporation in 2009. Clyde Armory's business centers on providing high quality products and services to both individuals and law enforcement agencies related to firearms, ammunition, optics, lights, and related tactical and self-defense equipment. Since opening our doors in 1991, Clyde Armory has grown significantly, in size, staff, and volume of business. Beginning in 1999, Clyde Armory operated out of the 1400 sq. ft. facility, before expanding to a 2900 sq. ft. facility in 2004, and then expanding again to a 12,500 sq. ft. facility

in 2010. Due to steady growth in sales, I was able to hire my first employees in 2002, and currently Clyde Armory employs about 25 people at its two locations, including 8 individuals dedicated solely to sales to law enforcement officers and agencies.

4. In my roles as founder, owner, and President of Clyde Armory, I am now, and have always been, responsible for all of Clyde Armory's day-to-day operations, business strategy, overall performance and image. At times, such as when I was away on active duty in the Navy, others assisted in the responsibilities of running the day-to-day operations, but those individuals always reported to me. It has always been my company to run. I take great pride in the company I have built from the ground up and feel a tremendous amount of satisfaction knowing that Clyde Armory's business was built on hard work and honest dealings with our customers and suppliers. It is important to me that my business has earned an excellent reputation in the industry and the community, and my employees and I have worked very hard to maintain that reputation.

5. I make this declaration in response to certain allegations made in FN Herstal S.A.'s ("FN") Motion for Summary Judgment, a copy of which my attorneys provided to me in a redacted form. Primarily, this declaration is meant to address FN's accusation that I developed the SCAR-Stock trademark mark with "wrongful intent" or "bad faith." I also address the statements made by Joshua Smith during his deposition, which FN references in its motion.

6. I did not adopt the SCAR-Stock trademark for my replacement stock products with wrongful intent or bad faith. Contrary to what FN alleges in its motion, I did not imitate or copy the SCAR name from FN. As I testified during my deposition in this case, I independently created the SCAR-Stock name as an acronym that stands for the combined names of my business and Sage International, Inc., with whom I collaborated to make the SCAR-Stock products.

SCAR-Stock is an acronym for Sage Clyde Armory Rifle Stock. The initial letter of the business names make up the "S", "C", and "A" of the SCAR-Stock trademark. The "R" stands for "rifle," followed by the work "Stock," which describes the type of product on which the SCAR-Stock trademark is used. I created the SCAR-Stock trademark in 2006 and began selling products under the SCAR-Stock trademark as early as September 2006.

7. The products that Clyde Armory sells under the SCAR-Stock trademark are replacement stocks, i.e., accessories, for certain rifles made by Sturm Ruger & Co., including the Mini-14, Mini Thirty, and AC-556. SCAR-Stock replacement stocks are not designed to be used with FN's SCAR assault rifles, nor can they ever be used with FN's SCAR assault rifles.

8. At the time that I created the SCAR-Stock trademark, FN was not selling SCAR assault weapons in the commercial market. The idea that I attempted to associate my SCAR-Stock products with FN's SCAR assault weapon is false and illogical. As I stated above, attempting to ride FN's coat tails for use with my replacement stocks, products that have no application to FN's product, would have been a very bad marketing and business decision and is not something I would ever have done. I cannot imagine selling an accessory for a product that, at the time I created the SCAR-Stock trademark, was not yet available and might never be available in the commercial market. That would just not make sense.

9. I find FN's accusation of wrongful intent and bad faith offensive and disappointing. As they said in their motion, I do believe that FN is an excellent company with an excellent reputation in the firearms industry. They make quality products and I am pleased to offer my customers products made by FN. I have always considered the business relationship between FN and Clyde Armory to be professional and courteous. However, my high opinion of FN as a firearms manufacturer only makes their accusations about my creation of the SCAR-

Stock trademark all the more disappointing. I created the SCAR-Stock trademark for use by my own company. The SCAR-Stock name is my intellectual property. To me, this is an instance of the big guy unnecessarily picking on the little guy to prevent me from using what is rightfully mine.

10. Regarding the testimony of Josh Smith, all I can say is that his testimony about my intent in creating the SCAR-Stock trademark was false. I categorically deny the accusation in his deposition testimony that I had some intent to "piggyback" off the name of FN's SCAR rifle sales. I never said or suggested anything like that to Josh, or anyone else. Moreover, Josh Smith was never involved in the creation of the SCAR-Stock trademark. It was solely my creation. And I certainly never told him that I wanted to "piggyback" off or associate my company's product with FN. Again, that is totally illogical.

11. Unfortunately, I believe that Josh's testimony comes from the fact that, while working for Clyde Armory, he became, and subsequently left Clyde Armory as a disgruntled employee. Although Josh was at one time a valued employee at Clyde Armory and helped run the day-to-day operations while I was on active duty, he quit in 2009 under poor circumstances. Since quitting, Josh has asked to be hired back multiple times but I have refused to do so. I believe that made Josh vindictive toward me and Clyde Armory, and that may be the basis for his false testimony regarding the origin of my creation of the SCAR-Stock trademark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of July, 2014.

*Andrew S. Clyde*
Andrew S. Clyde