# EXHIBIT 2
## TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

## SELECTED PORTIONS OF DEPOSITION OF HOCHSTRATE

1

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF GEORGIA

ATHENS DIVISION

FN HERSTAL, S.A.,                    )

      Plaintiff,                     ) Civil Action No.

                           ) 3:12-cv-275 (CAR)

VS                                   )

                           )

CLYDE ARMORY, INC.,                  )

      Defendant.                     )

DEPOSITION OF:   PAUL HOCHSTRATE

DATE:            FEBRUARY 28, 2014

HELD AT:         RADISSON HOTEL

                 50 MORGAN STREET

                 HARTFORD, CONNECTICUT



COPY

Reporter:   Sheryl L. Yeske, LSR #0000028

2

APPEARANCES:


Representing the Defendant CLYDE ARMORY, INC.:
      Wood Herron & Evans LLP
      2700 Carew Tower
      441 Vine Street
      Cincinnati, OH 45202
      513-241-2324
      By:  Glenn D. Bellamy, Esq.
           gbellamy@whe-law.com


REPRESENTING the Plaintiff FN HERSTAL S.A.:


      Ladas & Parry LLP
      Suite 1600
      224 S. Michigan Avenue
      Chicago, IL 60604
      312-427-1300
      By:  Burton S. Ehrlich, Esq.
           burte@ladas.net


REPRESENTING the Deponent PAUL HOCHSTRATE:


      Colt's Manufacturing Company, LLC
      545 New Park Avenue
      West Hartford, CT 06110
      860-244-1307
      By:  Joseph Dieso
           Deputy General Counsel and Secretary
           jdieso@colt.com

3

I N D E X

Examinations                                          Page

PAUL HOCHSTRATE

DIRECT EXAMINATION BY MR. BELLAMY                       5

CROSS-EXAMINATION BY MR. EHRLICH                       52

REDIRECT EXAMINATION BY MR. BELLAMY                    61

RECROSS-EXAMINATION BY MR. EHRLICH                     62

REDIRECT EXAMINATION BY MR. BELLAMY                    63

CROSS-EXAMINATION BY MR. DIESO                         65


                    DEFENDANT'S EXHIBITS


  No.          Description                             Page


  Exhibit 61 subpoena                                   7

  Exhibit 62 solicitation for SCAR program             14

  Exhibit 63 September 2006 Small Arms Review           21
             article

  Exhibit 64 October 2006 Small Arms Review             33
             article

  Exhibit 65 SCAR-L type C operator's manual            37

  Exhibit 66 SCAR-L type D operator's manual            44

  Exhibit 67 SCAR-L type A operator's manual            44

  Exhibit 68 SCAR-L type B operator's manual            48


  (Original exhibits retained by Attorney Bellamy)

with their clients until after we've had 30 days to review it.  Is that understood?

MR. BELLAMY:  Yes.

MR. EHRLICH:  That's understood.

BY MR. BELLAMY:

Q.  Also, in that same 30 days, you will have an opportunity to review the transcript to see if there were any errors in the transcription of it and so forth and to designate that.  And I will supply that to your counsel who will pass that onto you.

A.  Okay.

MR. BELLAMY:  Is that okay?

MR. DIESO:  Yes.

MR. BELLAMY:  Okay.

BY MR. BELLAMY:

Q.  Sir, are you currently employed?

A.  Yes.

Q.  By whom?

A.  Colt's Manufacturing.

Q.  And how long have you been employed by Colt's Manufacturing?

A.  There's been several name changes, but I've been with this company for over 29 years.

Q.  What's your current position?

A.  Chief engineer.

Paul Hochstrate                                      2/28/2014

26

Do you see any there?

A. No, I don't.

Q. Okay. Do you know whether there was any kind of manufacturer's marking on the rifles that Colt submitted to the SCAR program?

A. To my knowledge, there was only a serial number.

Q. And from what do you base that knowledge?

A. From what I remember from talking to people about what we put on the guns. And I also remember an edict, and I don't know if it was in the solicitation or what, that they wanted the guns that were coming in to not be marked with the manufacturer's name or any kind of indication of who made the gun. So, whoever was testing the gun or whoever picked up the gun wouldn't know whose gun it was, didn't have the preconceived notion whether they like the gun or not, by, you know, "That's an FN," or "that's a Colt."

Q. On that same page, there's a small column of text in the bottom left, the bottom paragraph, it reads "Three of the finalists were submissions by Colt Defense." Do you see that?

A. Yes.

Q. Was Colt, in fact, a finalist in the SCAR program?

Paul Hochstrate                                                        2/28/2014

54

products.

Q. No. No, in the SOCOM, what was referred to earlier today as the SCAR program --

A. Right.

Q. -- did Colt only make prototypes?

A. No, we made production guns.

Q. No, I'm talking about for SOCOM.

A. Oh, for SOCOM?

Q. Right. Under the SCAR program, under the SCAR program for SOCOM, Colt only made prototypes; isn't that correct?

A. Correct.

Q. When were those last prototypes provided to SOCOM?

A. June of 2004.

Q. And when was the award again, did you say?

A. The initial award for the solicitation was October, November 2003. But the award that FN won which was phase two was November 2004, from my understanding of the dates.

Q. Now, we've talked about some articles that were in these magazines. And the magazines were, the articles apparently were written by a Christopher Bartocci, who, you know him; do you not?

A. Yes.

Paul Hochstrate                                    2/28/2014

57

not have been circulated by your company beyond SOCOM; isn't that correct?

A.   Right.

Q.   I'm sorry?

A.   Correct.

Q.   Now, we looked at a drawing here on, I believe it was page 37, of one of these documents.  Let me find it here.  And you were asked to read some characters in that drawing on one of these operator manuals.  I believe it was page 31.

A.   Of which?

Q.   Exhibit 67.

A.   Okay.

Q.   Now, that's not a photograph, is it?

A.   No, it's not.

Q.   And what's depicted in that drawing may not reflect what's on the actual weapon?

A.   Correct.

Q.   And, so, as you sit here today, you wouldn't know how accurate or inaccurate this drawing is on what the -- excuse me, let me correct that.  This is a depiction of a weapon that you would have created had you have gone onto the next round in the SOCOM competition; is that correct?

A.    That would be my assumption, but I don't have

Paul Hochstrate                                                    2/28/2014

58

firsthand knowledge of that.  But that would be my assumption.

Q.  But you did not go onto the next round of the competition?

A.  Correct.

Q.  And maybe you could tell me what your assumption is based on.  Well, you don't know what it would have looked like had you gone onto the next round of the competition?

A.  Right.

Q.  That's your testimony?

A.  Right.

Q.  So, this is just a guess at what it might have looked like had you gone onto the next round of competition?

A.  Correct.

Q.  Is there anything that you've discussed today in terms of your dealings with SOCOM that you would consider to be something you could not disclose as a result of SOCOM's requirements?

A.  No.

Q.  So, what we've discussed here today, other than that Colt might not want pictures and drawings disclosed, would be subject matter that you would not be prevented from disclosing; is that correct?

60

Q.  And when you were testifying earlier today about SCAR and SCAR-L and that sort of thing, those were, that was in relationship to the SOCOM program?

A.  Correct.

Q.  And you now know who manufactured -- and FN is the manufacturer of SCAR now; isn't it?

MR. BELLAMY:  Objection.

THE WITNESS:  The manufacturer of their version of the rifle that won the SCAR competition.

BY MR. EHRLICH:

Q.  But Colt doesn't make any SCAR product; does it?

A.  No.

Q.  And Colt has never sold a SCAR product to the public; has it?

MR. BELLAMY:  Objection.

THE WITNESS:  Well, now we're getting -- maybe I don't quite understand your question when you're saying "SCAR product."

BY MR. EHRLICH:

Q.  Okay.  I meant anything where there's a designation on the rifle "SCAR"?

A.  No, we don't.

Q.  Now, Colt is a head to head competitor with FN Herstal, the plaintiff in this case; is it not?