IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

FN HERSTAL, S.A.,      :
           :
   **Plaintiff,**     :
**v.**           :
           :  **No. 3:12-CV-102 (CAR)**
**CLYDE ARMORY, INC.,**    :
           :
   **Defendant.**    :
_____ :

## ORDER ON MOTION FOR AN AWARD OF ATTORNEYS' FEES, MOTION TO MODIFY THE INJUNCTION, AND MOTION FOR CONTEMPT

Currently before the Court is Plaintiff FN Herstal S.A.'s Motion for an Award of Attorneys' Fees as the prevailing party in the trademark infringement action, pursuant to O.C.G.A. § 13-6-11, 15 U.S.C. § 1117(a), and Federal Rule of Civil Procedure 54(d). Additionally, before the Court is Defendant Clyde Armory, Inc.'s Motion to Modify the Injunction the Court granted Plaintiff in its Bench Trial Order [Doc. 151]. In response, Plaintiff filed a Cross-Motion for Contempt regarding Defendant's flagrant disregard of the injunction. For the reasons stated below, Plaintiff's Motion for an Award of Attorneys' Fees [Doc. 153] is **GRANTED**, Defendant's Motion to Modify the Injunction [Doc. 162] is **DENIED in part and GRANTED in part**, and Plaintiff's Motion for Contempt [Doc. 169] is **DENIED in part and GRANTED in part**.

## BACKGROUND

This action arises from a trademark infringement case where both Plaintiff FN Herstal, S.A. ("FN") and Defendant Clyde Armory, Inc. ("Clyde Armory") claimed superior rights to use "SCAR" or "SCAR-Stock" in the firearms industry.  FN's mark originates from winning a bid with the United States Special Operations Forces Command to design and manufacture a new combat assault rifle for the U.S. Military. The solicitation for the bid referred to the rifle as the "Special Operations Forces Combat Assault Rifle," abbreviated as "SCAR." FN began producing the rifles with the SCAR mark in 2004.  In 2005, Clyde Armory worked with Sage International, Inc. to develop replacement stock for one of Sage's rifles.   The replacement stock is completely unrelated to FN's SCAR rifles.  In 2006, Clyde Armory adopted the SCAR-Stock mark for its replacement stock system to reflect the collaborative effort of Sage and Clyde Armory.   After learning of Clyde Armory's mark, FN brought a trademark infringement suit in this Court.[1]

In 2015, after a Bench Trial, this Court found FN has superior trademark rights in the SCAR mark and entered judgment in favor of FN on all its claims, including trademark infringement, unfair competition under federal law, and related state law claims.[2]  In general, the Court ordered Clyde Armory to: (1) cease any use of the SCAR

---

[1] *See* Bench Trial Order, [Doc. 151] at p. 2-13.
[2] *Id*. at p. 32-34.

or SCAR-Stock marks; (2) abandon any trademark applications for these marks; (3) assign any domain names including these marks to FN; (4) dismiss with prejudice its Cancellation Petition and Opposition Petition against FN's Registration for these marks; (5) deliver up for destruction all labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in its control that display the marks; and (6) within sixty days of the Court's Order, file a report setting forth the manner and form of its compliance with the Order.[3]

After final judgment was entered, FN filed a Motion for Attorneys' Fees pursuant to O.C.G.A. § 13-6-11, 15 U.S.C. § 1117(a), and Federal Rule of Civil Procedure 54(d), claiming Clyde Armory's bad faith conduct in intentionally copying FN's mark warrants an award of attorneys' fees.  Subsequently, Clyde Armory filed an appeal with the Eleventh Circuit Court of Appeals.

Additionally, Clyde Armory seeks to modify this Court's injunction pending the appeal, pursuant to Federal Rule of Civil Procedure 62.  In its Motion to Modify the Injunction, Clyde Armory requests the Court grant the proposed modifications until the appellate process and potentially post-appellate proceedings are concluded. Specifically, Clyde Armory requests the following modifications: (1) permission to continue selling the current inventory of its SCAR-Stock product in its store and through its primary website, but it agrees not to advertise in magazines or other

---

[3] *Id*. at 34–35.

websites; (2) to suspend, rather than abandon, its current trademark application; (3) to deactivate its scarstock.com website and put up a placeholder screen, rather than assign the domain to FN; (4) to suspend, rather than dismiss with prejudice, the cancellation and opposition proceedings filed against FN's SCAR mark; (5) to store in a warehouse at its own expense the identified items rather than destroy these items; and (6) if unsuccessful on appeal, comply and report its complaint with the original terms of the injunction within sixty (60) days of the final judgment.[4] Currently, Clyde Armory has only complied with its proposed modified injunction.

In response, FN filed a Cross-Motion for Contempt for Clyde Armory's failure to comply with the Court's Bench Trial Order. FN requests the Court order Clyde Armory to immediately comply with the original injunction and allow FN to seize the remaining SCAR-Stock products and materials. Additionally, as a sanction for violating the injunction, FN seeks an award of the attorneys' fees it has incurred in moving for Contempt. The Court will now address each motion in turn.

---

[4] Def.'s Mtn. to Modify Injunction, Text of Proposed Order [Doc. 162-3] at p. 1-2. FN agrees to Clyde Armory's request to suspend, rather than abandon, its current trademark application. *See* Pl.'s Response and Cross-Motion, [Doc. 169] at p. 22.

## DISCUSSION

### I.      FN's Motion for Attorneys' Fees

FN seeks attorneys' fees based on the Court's finding that Clyde Armory acted in bad faith in adopting the SCAR-Stock mark.[5]  FN argues a finding of bad faith makes this an exceptional case under the Lanham Act, and the Court should therefore award FN reasonable attorneys' fees.  However, Clyde Armory contends, first, it did not act in bad faith in adopting the mark, and second, despite this finding, the Court should still deny attorneys' fees, as it is well within the Court's discretion.

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[6] While Congress did not further define exceptional, the Eleventh Circuit holds an "exceptional case" is "one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists."[7]  "Although a case may rise to the level of exceptionality, the decision to grant attorney fees remains within the discretion of the trial court."[8]

---

[5] In an effort to conserve judicial resources, FN moves for leave to submit evidence of the fees incurred only if the Court determines attorneys' fees should be awarded.  The Court will stay this determination until the appeal process is complete.

[6] 15 U.S.C. § 1117(a).

[7] *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332 (2001) (internal citations and quotation marks omitted).

[8] *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (citing *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989), *cert. denied*, 498 U.S. 950 (1990)).

FN suggests the Supreme Court's recent decision in *Octane Fitness LLC v. ICON Health & Fitness Inc.* has changed the standard for determining exceptional cases.[9]  In *Octane*, the Supreme Court held the Federal Circuit's framework for awarding attorney's fees in patent cases under 35 U.S.C. § 285 was "unduly rigid."  The Supreme Court, instead, held

> an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigation position (considering the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District Courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.[10]

Though other circuits, as well as district courts within this Circuit, adopted the *Octane* standard in trademark cases, neither the Supreme Court nor the Eleventh Circuit has

---

[9] ___ U.S. ___, 134 S.Ct. 1749 (2014).
[10] *Id.* at 1756.

addressed whether *Octane* applies to the Lanham Act.[11]  Thus, the Court is bound by the Eleventh Circuit's standard for exceptional cases.[12]

Because there is ample evidence to show Clyde Armory adopted the SCAR-Stock mark in bad faith, the Court finds this is an exceptional case.  For instance, the Court found Mr. Clyde's testimony regarding the adoption of the mark was not credible.  Mr. Clyde claimed he adopted the SCAR-Stock mark as an acronym to reflect the collaborate effort of Sage and Clyde Armory.  However, Mr. Clyde never told anyone about the meaning of the acronym, not even the president of Sage.  Mr. Clyde was familiar with FN's products and knew about the SCAR firearm when he adopted the SCAR-Stock mark for use in the same industry.  The Court also found Clyde Armory's former Chief Operating Officer, Joshua Smith's testimony was credible with regard to this matter.  Mr. Smith testified Mr. Clyde knew about the marketing of SCAR products, and in adopting the SCAR-Stock mark, Clyde Armory was attempting to take

[11] *See, e.g., Georgia-Pacific Consumer Products LP v. Von Drehle Corp.*, 781 F.3d 710, 719-21 (4th Cir. 2015) (incorporating *Octane*'s definition of exceptionality under Section 1117(a)); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 813-15 (3d Cir. 2014) (adopting *Octane* for determining "exceptional" cases under the Lanham Act and eliminating the circuit's culpability requirement); *Baker v. DeShong*, 821 F.3d 620, 621-25 (5th Cir. 2016) ("In light of the Supreme Court's clear guidance under § 285—and given the parallel purpose, structure, and language of § 1117(a) to § 285—we join our sister circuits in their reading of "exceptional" under *Octane Fitness* and construe the same meaning here."); *Donut Joe's, Inc. v. Interveston Food Services, LLC*, 116 F.Supp.3d 1290, 1293-94 (N.D. Ala. 2015); *High Tech Pet Products, Inc. v. Shenzhen Jianfeng Electronic Pet Product Co., Ltd.*, No. 6:14-cv-759-Orl-22TBS, 2015 WL 926023, at *1-2 (M.D. Fla. March 4, 2015); *Atlantic Nat. Bank v. Atlantic Southern Bank*, No. CV 208-147, 2010 WL 5067412, at *3 (S.D. Ga. Nov. 23, 2010).
[12] *See Synergistic Int'l, LLC v. Berry*, No. 1:14-CV-0813-LMM, 2015 WL 10960930, at *2 (N.D. Ga. Feb. 4, 2015) (applying the Eleventh Circuit standard for exceptional cases and finding "that because the Defendant continued to infringe Plaintiff's mark after receiving a cease and desist letter, evaded service, and failed to respond to the Complaint, Plaintiff is entitled to attorneys' fees under the Lanham Act").

advantage of the popularity surrounding the SCAR mark in the firearms industry. Indeed, the SCAR-Stock mark imitates the font and style of FN's laser-engraved SCAR mark.  Thus, as stated in the Bench Trial Order, there is ample evidence to support a finding of bad faith.  "Furthermore, an award of attorney's fees … will serve the important functions of deterring future infringements, penalizing Defendant[ ] for [its] unlawful conduct, and compensating Plaintiff for their fees and costs."[13]  Accordingly, the Court finds this is an exceptional case, making it appropriate to award FN reasonable attorneys' fees.

Additionally, under the *Octane* standard for exceptionality, FN would certainly be entitled to reasonable attorneys' fees.  *Octane* has been described as a "less rigid and more holistic" standard.[14]  "Under the new standard, no bright-line rules define the parameters of what is exceptional, and no single element (such as baselessness or sanctionability) is dispositive.  Rather, the inquiry requires the Court to consider a totality of the circumstances and to exercise its equitable discretion."[15]  Here, not only was Mr. Clyde's testimony not credible, but now, Clyde Armory continues to sell its SCAR-Stock products and ignores FN's requests to stop.  Thus, this is an exceptional case under the *Octane* standard.

---

[13] *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F.Supp.2d 1213, 1222 (S.D. Fla. 2004).

[14] *High Tech Pet Products, Inc.*, No. 6:14-cv-759-Orl-22TBS, 2015 WL 926023, at *1 (M.D. Fla. Mar. 4, 2015) (quoting *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11–CV–6635–LHK, 2014 WL 2508386, at *6 (N.D. Cal. June 3, 2014)).

[15] *Id.*

8

The Court recognizes it may be reasonable for Clyde Armory to wait for the Court to decide its Motion to Modify the Injunction before fully complying with the Court's Order.  For instance, waiting to abandon or cancel its pending trademark applications may be reasonable.  However, it was completely unreasonable for Clyde Armory to continue selling the SCAR-Stock products to make a profit off an infringing mark and maintaining a website that directed people to such sales.  Clyde Armory could have easily taken these products off the market, as required by the Court's Order, until the Motion to Modify the Injunction was decided.  Instead, Clyde Armory attempts to deplete the remaining SCAR-Stock inventory and ignores FN's repeated requests to comply with the Court's injunction.  Based on a totality of the circumstances, the Court finds Clyde Armory's behavior before and after the Bench Trial supports an award of attorneys' fees.[16]

Accordingly, FN's Motion to Award Attorneys' Fees [Doc. 153] is **GRANTED**. The Court will **STAY** determination of the amount of reasonable fees to be awarded until Clyde Armory's pending appeal is decided.

---

[16] *See, e.g., CarMax Auto Superstores v. StarMax Finance, Inc.,* __ F.Supp.3d __, No. 6:15-cv-898-Orl-37TBS, 2016 WL 3406425, at *4 (M.D. Fla. June 21, 2016) (finding an award of attorneys' fees appropriate where the defendant ignored the plaintiff's intellectual property rights, as well as the Court's default judgment and injunction, and continued its decision to infringe).

## II.      Clyde Armory's Motion to Modify the Injunction

Clyde Armory requests the Court modify the injunction issued on August 20, 2015, pending the completion of its appeal to the Eleventh Circuit Court of Appeals. Clyde Armory contends the modified injunction will preserve the parties' status quo, give reasonable effect to the terms of the injunction, and provide adequate protection to both parties' rights pending the complete of the appeal.  However, FN argues the Court does not have jurisdiction to dissolve the injunction while it is on appeal, and even if the Court has jurisdiction, the motion should still be denied because Clyde Armory cannot meet the standard for modifying an injunction.

"As a general rule, '[t]he filing of a notice of appeal … divests the district court of control over those aspects of the case involved in the appeal.'"[17]  However, under Rule 62(c), "[w]hile an appeal is pending from an interlocutory order or final judgment that grants … an injunction, the court may … modify … an injunction on terms for bond or other terms that secure the opposing party's rights."[18]  "Courts have interpreted Rule 62(c) to allow a district court to modify an injunction that has been appealed only to the

---

[17] *Pacific Ins. Co. v. General Dev. Corp.*, 28 F.3d 1093, 1096 n.7 (11th Cir. 1994) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)).
[18] Fed. R. Civ. P. 62(c).

extent necessary to maintain the status quo, and the modification cannot be such that it moots the appeal and divests the appellate court of jurisdiction."[19]

Here, FN contends Clyde Armory is essentially asking the Court to dissolve the injunction and consider arguments already rejected by the Court. Thus, the Court lacks jurisdiction to consider the motion. The Court disagrees. Clyde Armory's modifications are an attempt to lessen many of the harsh effects of the injunction, but the modifications do not completely dissolve the injunction.[20] Even if the Court granted Clyde Armory's modifications, it would not change the Court's decision that FN has superior rights to the trademark, which is the main issue on appeal. Thus, the modifications would not materially alter the status of the case on appeal.[21] Additionally, this Court is not reconsidering its previous decision.[22] Clyde Armory is required to show its likelihood of success on appeal, and the Court must consider this factor before granting a Rule 62 motion. Therefore, the Court has jurisdiction to

[19] *Sammons v. Polk Cnty. Schl. Bd.*, No. 8:04CV2657T24EAJ, 2006 WL 82606, at *2 (M.D. Fla. Jan. 12, 2006) (citing *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989)).

[20] *See id.* ("[Rule 62] does not allow a district court to dissolve an injunction during the pendency of the appeal.").

[21] *See Securities and Exchange Com'n v. Kirkland*, No. 606-CV183-ORL-28KRS, 2006 WL 2639522, at *2 (M.D. Fla. Sept. 13, 2006) ("A district court does not have the power to alter the status of the case as it rests before the Court of Appeals." (quoting *Green Leaf Nursery v. E.I. Du Pont de Nemours*, 341 F.3d 1292, 1309 (11th Cir.2003)).

[22] *Dillard v. City of Foley*, 926 F.Supp. 1053, 1076 (M.D. Ala. 1995) (Rule 62 is "not designed to restore jurisdiction to the district court to adjudicate anew the merits of the case after either party has invoked its right of appeal and jurisdiction has passed to an appellate court." (internal citations and quotation marks omitted)).

11

consider Clyde Armory's Motion and will now turn to Clyde Armory's request to modify the injunction.

When exercising its discretion to modify an injunction, the Court must consider the following factors:  "(1) the movant's likelihood of success on appeal; (2) the potential for irreparable injury to the movant in the absence of [the modification]; (3) whether [the modification] would substantially harm other parties; and (4) whether the [modification] serves the public interest."[23]  Ordinarily, the first factor is the most important, and requires the movant to show the district court was "clearly erroneous."[24]  However, the movant "may also have its motion granted by showing only that it has a 'substantial case on the merits,' if the final three factors weigh[ ] heavily in favor of granting the [motion]."[25]  Under either approach, granting the motion is an "exceptional response."[26]

Clyde Armory contends the following arguments have a strong likelihood of success on appeal as to justify a modified injunction: (1) the Court erred in determining Clyde Armory adopted the SCAR-Stock mark in bad faith; (2) the Court erred when it *sua sponte* granted FN summary judgment on Clyde Armory's affirmative defense of

---

[23] *United States v. Engelhard Corp.*, No. 6-95-CV-45 (WLS), 1997 WL 834205, at *1 (M.D. Ga. April 7, 1997) (citing *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)).

[24] *Garcia–Mir*, 781 F.2d at 1453 ("Ordinarily the first factor is the most important. A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous.").

[25] *Rashad v. Fulton Cnty. Dep't of Health and Wellness*, No. 1:05-cv-01658-JOF, 2010 WL 2821845, at *3 (N.D. Ga. July 15, 2010) (quoting *Garcia–Mir*, 781 F.2d at 1453).

[26] *United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir.1992).

unlawful use; and (3) the Court abused its discretion when it allowed FN to withdraw its consent to trial by jury and rejected Clyde Armory's request to reinstate its damages claim.  The Court has already fully considered each argument in the Court's the Bench Trial Order.  Clyde Armory now fails to persuade the Court its previous decisions were clearly erroneous.  Thus, the first factor does not weigh in favor of modifying the injunction, as Clyde Armory fails to make a strong showing it is likely to prevail on appeal.

Additionally, as to the final three factors, the Court finds they do not weigh heavily in favor of granting the modifications.  First, the relief requested does not preserve the status quo or provide both parties protection as Clyde Armory claims. Instead, the modifications confer a benefit on Clyde Armory by allowing it to profit off the infringing products.[27]  The Court recognizes Clyde Armory may experience some harm in not granting the requested modifications.  However, these hardships are minimal, as there are not many SCAR-Stock products remaining.  "[O]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."[28]

---

[27] *See, e.g., Brake Parts, Inc. v. Lewis*, Nos. 09-132-KSF, 10-212-KSF, 2011 WL 93036, at *2-3 (E.D. Ky. Jan. 11, 2011) ("Here, the relief requested by [the defendant] does not preserve the status quo, but to essentially confer an additional benefit upon [the defendant] by allowing it to profit from its conduct which the Court found likely to amount to misappropriation of [the plaintiff's] trade secrets.").

[28] *Merial LTD. V. Valcera Inc.*, 877 F.Supp.2d 1348, 1366, (M.D. Ga. 2012) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 704 (Fed.Cir. 2008); *see also, Instrumentalist Co. v. Marine Corps League*, 509

Accordingly, the Court finds any hardships Clyde Armory may experience do not rise to a level of irreparability to warrant modifying the injunction.

Second, the requested modifications do not give reasonable effect to the terms of the injunction, nor do they provide adequate protection to FN.   Ultimately, the modifications would only stop Clyde Armory from producing more infringing products, but it would still allow Clyde Armory to sell the remaining inventory.   It is clear FN will be irreparably harmed if the Court allows Clyde Armory to continue making a profit off the infringing mark.[29]   The Court finds the harm to FN in granting any of these modifications outweighs the harm to Clyde Armory in enforcing the original injunction.[30]

Third, in the trademark context, the public has a right to not be deceived or confused by Clyde Armory's infringing mark.[31]   Thus, the public interest weighs heavily against modifying the injunction.

---

F.Supp. 323, 341-42 (N.D. Ill. 1981) ("Any claimed hardships encountered because of the injunction are really of defendants' own making and in any event do not rise to the level of irreparability.").

[29] *See, e.g., Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F.Supp.2d 517, 520 (W.D. N.C. 1999) ("Defendants unauthorized use of Plaintiffs' federally registered service mark presents an undeniable threat to Plaintiffs' reputation and goodwill and, therefore, creates imminent irreparable harm.").

[30] *See, e.g., Universal Motor Oils Co., Inc. v. Amoco Oil Co.*, Civ. A. No. 89-1662-T, 1990 WL 163303, at *1-2 (D. Kan. Sept. 12, 1990) ("The court agrees that the defendant does risk losing the use of [its product] if it changes its designation pending appeal. The court believes, however, that this risk of harm is insufficient to justify a stay of the modified injunction. Any harm to its relationship with its dealers and distributors would be a result of defendant's own conduct and does not justify a stay.").

[31] *See, e.g., Century 21 Real Estate LLC v. All Professional Realty, Inc.*, 889 F.Supp.2d 1198, 1243-44 (E.D. Cali. 2012) ("[T]he public interest weighs heavily against granting a stay because the public interest in the trademark context is the right of the public not to be deceived or confused.").

Accordingly, the Court finds Clyde Armory has failed to meet its burden under Rule 63, as all four factors weigh against modifying the Court's injunction.  However, FN does concede to one modification—allowing Clyde Armory to suspend, rather than abandon, its current trademark application.[32]   Therefore, Clyde Armory's Motion to Modify the Injunction [Doc. 162] is **GRANTED in part** and **DENIED in part**.

### III.     FN's Motion for Contempt

In response to the request for a modified injunction, FN filed a Cross-Motion for Contempt, arguing the Court should sanction Clyde Armory for failing to comply with the Court's Order.  However, Clyde Armory contends it should not be held in contempt because FN's motion is unwarranted and premature.

"An injunction can be enforced, if necessary, through a contempt proceeding."[33] "A finding of civil contempt—willful disregard of the authority of the court—must be supported by clear and convincing evidence."[34]   Once the *prima facie* showing of a violation is made, the burden shifts to the alleged contemnor to produce evidence

---

[32]  *See* Pl.'s Response and Cross-Motion, [Doc. 169] at p. 22. *See Lawson v. Life of South Ins. Co.*, 738 F.Supp.2d 1376, 1382 (M.D. Ga. 2010) (noting the Ninth Circuit only affirmed a district court's post-judgment modifications because the modifications "did not materially alter the status of the case on appeal….").

[33]  *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002).

[34]  *Id*. ("The clear and convincing evidence must establish that: (1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order.").

showing its inability to comply with the injunction.[35]   The Eleventh Circuit has stated "substantial, diligent, or good faith efforts are not enough; the only issue is compliance."[36]   However, "[c]onduct that evinces substantial, but not complete, compliance with the court order may be excused if it was made as part of a good faith effort at compliance."[37]

In this case, it is undisputed Clyde Armory did not adhere to the injunction set out in the Court's Bench Trial Order.   Admittedly, Clyde Armory has only complied with the modified injunction it proposed to the Court.[38]   Clyde Armory fails to rebut FN's *prima facie* case of contempt or present any evidence to show its inability to comply with the injunction.   Instead, Clyde Armory simply contends it is not in contempt because it appealed the Court's Bench Trial Order to the Eleventh Circuit and moved the Court to modify the injunction.   According to Clyde Armory, it does not have to fully comply with the Court's Order until after the Court's decision regarding the modified injunction.   However, the Court disagrees.

---

[35] *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). "The burden shifts back to the initiating party only upon a sufficient showing by the alleged contemnor. The party seeking to show contempt, then, has the burden of proving ability to comply." *Commodity Futures Trading Com'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992).

[36] *F.T.C. v. Leshin*, 618 F.3d 1221, 1232-33 (11th Cir. 2010) (citing *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir.1986)).

[37] *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1516 (11th Cir. 1990) ("The district court's judgment of civil contempt will be affirmed unless [Eleventh Circuit] find[s] that the court abused its discretion.").

[38] Def.'s Reply to the Mtn. to Modify the Injunction and Response to Pl.'s Cross-Motion for Contempt, [Doc. 170] at p. 8-9.

Once this Court ordered the injunction, Clyde Armory was to respect and comply with the Order, unless it was unable to do so.[39]  As stated above, though waiting to abandon the trademark application may have been reasonable or at most a good faith effort to comply with the injunction, the same cannot be said for Clyde Armory's continued sales of the SCAR-Stock product.  Additionally, several of the requested modifications seem like an attempt to avoid the harsher effects of the injunction.  For instance, instead of ceasing all promotions and sales of the infringing products, Clyde Armory requests to continue selling the remaining SCAR-Stock inventory (76 units) in its store and through its primary website, and agrees to no longer advertise its SCAR-Stock products in magazines or other websites.  However, Clyde Armory already ceased advertising through third-party carriers in 2013.  Further, Clyde Armory requests to deactivate the scarstock.com website and put an "under construction" screen in its place, rather than assign the website to FN.  Yet currently, the under construction screen directs users to Clyde Armory's main website where the

---

[39] *See Howat v. Kansas*, 258 U.S. 181, 189–90 (1922) ("An injunction duly issuing out of a court of general jurisdiction with equity powers ... must be obeyed by [the parties], however erroneous the action of the court may be .... It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished."); *Locke v. United States*, 75 F.2d 157, 159 (5th Cir. 1935) ("Willful disobedience of an injunction, however erroneous, issued by a court having jurisdiction while such injunction is in force unreversed constitutes contempt of court.") (Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute circuit precedent in the Eleventh Circuit, see *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)); *but see Gannett Outdoor Co. v. Feist*, No. 1:89-CV-472, 1991 U.S. Dist. LEXIS 948, at *14 (W.D. Mich. Jan. 29, 1991) (refusing to find defendants in contempt for failing to follow the court's order while an appeal and motion to stay the injunction were both pending).

infringing products are still sold.  The requested modifications are simply an attempt to avoid losing profits on the remaining infringing products.  Clyde Armory did not comply, or even substantially comply with the injunction.  Therefore, the Court finds Clyde Armory in contempt of the Court's Bench Trial Order and will now consider the appropriate sanction.

"A court has broad discretion in fashioning a contempt sanction."[40]  A contempt sanction "can be either coercive, which is intended to make the recalcitrant party comply, or compensatory, which 'reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance.'"[41]  FN seeks both a coercive and compensatory sanction.  Specifically, FN requests the Court order Clyde Amory to immediately comply with the original injunction, to allow FN to seize all SCAR-Stock products to ensure compliance, and to award FN attorneys' fees incurred in moving for Contempt.

The Court agrees a coercive order is appropriate.  The Court orders immediate compliance with the original injunction set out in the Court's Bench Trial Order, and will schedule a hearing to ensure compliance with the Court's Order.  At this time, the Court finds immediate seizure of the infringing products or compensatory sanctions are unnecessary.

---

[40] *Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1536 n.8 (11th Cir. 1986).
[41] *Id.* at 1534 (quoting *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 458 (11th Cir. 1984)).

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for an Award of Attorneys' Fees [Doc. 153] is **GRANTED**, Defendant's Motion to Modify the Injunction [Doc. 162] is **DENIED in part and GRANTED in part**, and Plaintiff's Motion for Contempt [Doc. 169] is **DENIED in part and GRANTED in part**.  The Court will **STAY** consideration of the amount of reasonable attorneys' fees until the pending appeal is disposed of.

Further, **IT IS HEREBY ORDERED** that Clyde Armory, its respective directors, officers, agents, and employees immediately comply with the Court's Injunction set out in its Bench Trial Order, with the exception of abandoning its trademark application. Clyde Armory may suspend, rather than abandon, any trademark applications already filed that show SCAR-Stock or include the designations, names, or marks SCAR and any confusingly similar variations thereof, pending the conclusion of the appeal.  To ensure compliance with the Court's Order, the parties are **HEREBY DIRECTED** to appear before the Court on October 25, 2016 at 2:00 p.m. in Athens, Georgia.

**SO ORDERED,** this 27th day of September, 2016.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT